PER CURIAM.
Appellant, South Broward Hospital District (SBHD), appeals a final order denying its motion to compel an accounting and determining no money was due pursuant to a written agreement between the parties. We reverse and remand for further proceedings.
SBHD, Nu-Med Pembroke, Inc. d/b/a Pembroke Pines General Hospital (Nu-Med), and the Department of Health and Rehabilitative Services entered into an agreement resolving issues in various pending certificate of need applications. In the written agreement, Nu-Med agreed to furnish five percent of its obstetric admissions to indigent persons as that term is defined by the federal government in the administration of its Hill-Burton program.[1] Nu-Med was to furnish data to SBHD for each twelve month period setting forth the total number of obstetric patients admitted, the total number of indigent obstetric patients admitted, and the average charge per obstetric admission. If indigent obstetric patients constituted less than five percent of the total number of obstetric patients admitted during each twelve month period, Nu-Med agreed to pay to SBHD “a sum of money that equals the number (rounded to the nearest whole number) of obstetric patients that constitutes the difference between the number of indigent obstetric admissions and five percent (5%) of total obstetric admissions, times the average charge per obstetric admission at [Nu-Med] for that same period of time.”
In an action initiated by Nu-Med, SBHD filed a counterclaim which alleged that Nu-Med had not provided the required information regarding indigent patients under the agreement. The counterclaim also alleged that Nu-Med’s indigent obstetric patients during its first twelve months of service, and continuing thereafter, did not constitute five percent of the total obstetric admissions and Nu-Med had not tendered any of the monies required by the agreement. The trial court found that the agreement was binding and that SBHD was entitled to an accounting regarding indigent obstetric admissions, as provided in the agreement, for the period July 1, 1988 through March 2,1990, the date Nu-Med sold the hospital.[2]
Nu-Med submitted a list of 843 obstetrical patients and an attachment explaining the codes utilized under the “financial condition” column. There was no code for “indigent.” SBHD filed a motion to com *13 pel accounting, asserting that the accounting provided does not comply with the agreement. SBHD asserted that federal regulations mandate that a hospital seeking to receive credit for providing uncompensated indigent care in order to satisfy obligations under the Hill-Burton Act must make a preadmission determination of a patient’s economic circumstances and ability to pay and that this determination must be recorded and maintained by the hospital in the form of a witnessed statement or affidavit.[3] SBHD alleged that there is no indication as to which listed patients qualified as indigent and no way to ascertain which patients were in fact indigent as defined by the agreement.
Nu-Med filed the affidavits of two officers who asserted that the hospital provided almost $4,400,000 worth of care and collected only $2,800,000 during the period in question. It was also asserted that free care was provided to 37 patients and approximately 10 patients paid $100 or less during the period in question. The officers stated that the hospital does not have the additional information set out in the agreement. The hospital allegedly did not obtain information on the patients’ income level and ability to pay when they were admitted because the hospital did not believe that the agreement was in effect. The officers asserted, however, that the hospital made every reasonable effort to collect the money from patients who had the ability to pay and did not attempt to collect from those individuals who were unable and, therefore, they believed that the hospital met the spirit and intent of the agreement by providing care to patients who did not have the ability to pay.
The trial court found that, based upon the federal Hill-Burton guidelines, Nu-Med failed to provide any “indigent” care within the technical meaning of that term. The order further provides, however, that:
Despite the failure of NU-MED to comply with the technical requirements of Hill-Burton, and therefore with the letter of the Agreement, the Court holds that NU-MED has complied with the spirit and intent of the Agreement by providing uncompensated services to 37 obstetric patients, and by collecting $100 or less from 10 other patients between the period of July 1, 1988 and March 2, 1990. NU-MED has produced significant documentary evidence to demonstrate that it treated de facto indigent patients. Therefore, no further accounting is required of NU-MED, and no payment is due to SBHD.
The trial court’s finding that the provision of uncompensated services to 37 patients and the collection of $100 or less from 10 other patients demonstrates that the appellee met the spirit and intent of the agreement is not supported by competent, substantial evidence. It cannot be determined which of those 47 patients, if any, were indigent and which merely represented bad debts of the hospital. Appellee is contractually bound to account for indigent obstetric patients in accordance with the Hill-Burton criteria. This is unambiguous, and appellee failed to comply. Appellant is entitled to compensation according to the formula in the agreement. Accordingly, we reverse the trial court’s order and remand to the trial court for a determination of the sum due to SBHD pursuant to the agreement.
ZEHMER, BARFIELD and WOLF, JJ., concur.

. 42 U.S.C. section 291.

. The trial court dismissed Nu-Med's complaint for failure to state a cause of action.

. See 42 C.F.R. section 53.111.